# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 47056

LINDSEY WILSON,           )
                                    )      **Boise, June 2020 Term**
    Plaintiff-Respondent,   )
                                      )      **Opinion Filed:  July 6, 2020**
v.                              )
                                    )      **Melanie Gagnepain, Clerk**
SEAN MOCABEE           )
                                    )
    Defendant-Appellant    )
                                    )

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County. Cynthia K.C. Meyer, District Judge.

The decision of the district court is <u>affirmed</u>.  Costs, but no attorney fees, are <u>awarded</u> to Wilson.

Post Falls Law, Post Falls, attorney for Appellant. Jonathon Frantz argued.

Bistline Law, PLLC, Coeur d'Alene, attorney for Respondent. Arthur Bistline argued.

---

BEVAN, J.

## I. NATURE OF THE CASE

This case presents a dispute between an unmarried couple over ownership of a home. Appellant Sean Mocabee and Respondent Lindsey Wilson began an intimate relationship in 2000 and began cohabitating. In 2013, after receiving a large inheritance, Wilson fully funded the purchase of a home in Kootenai County, Idaho. Per Wilson's instruction to the title company, Mocabee's name was included on the deed. In 2017, Wilson and Mocabee split. Shortly thereafter, Wilson filed a complaint against Mocabee for quiet title, unlawful detainer and partition of the home. Mocabee answered and counterclaimed, seeking partition and for the district court to declare Mocabee owned a fifty percent interest in the home. Mocabee also moved for summary judgment arguing the statute of limitations barred Wilson's quiet title

1

action. The district court granted Mocabee's motion for summary judgment as to the quiet title action.

The case proceeded to trial on the partition action. Mocabee filed a motion in limine asking the district court to exclude evidence demonstrating Wilson did not intend to give Mocabee a fifty percent ownership interest in the home. The district court denied the motion. After a bench trial, the district court concluded Wilson had a one hundred percent ownership interest in the home because she had contributed one hundred percent of the purchase price and the evidence did not establish Wilson intended to give Mocabee any ownership interest. As a result, the district court held that a partitioning of the home was unnecessary. Mocabee timely appealed, arguing the district court erred in (1) using partition statutes to deprive him of any interest in the home, (2) denying Mocabee's motion in limine, and (3) concluding Mocabee did not own a fifty percent ownership interest in the home by way of a gift from Wilson. We affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Wilson and Mocabee began an intimate relationship in 2000 and started cohabitating. In 2013, Wilson received a large inheritance from a deceased family member. After receiving the inheritance, Wilson decided to build the home at issue to reside in with Mocabee. It is undisputed that Wilson contributed one hundred percent of the purchase price and Mocabee contributed no monies toward the cost of the home. Before closing, Wilson and Mocabee discussed whether Mocabee should be included on the deed and ultimately decided that he should. When presented with closing documents, Wilson realized the buyer's instructions listed Mocabee's name first. Wilson instructed the title company to place her name first since she was funding the purchase, and to place Mocabee's name second since he was "an authorized user." The buyer's instructions were then interlineated as follows: "Title to be vested in the name of: ~~SEAN MOCABEE AND~~ LINDSEY WILSON <u>AND SEAN MOCABEE</u>." The deed was recorded in Kootenai County on October 17, 2013, and reads: "FOR VALUE RECEIVED, COPPER BASIN CONSTRUCTION, INC., AN IDAHO CORPORATION, [h]ereinafter called Grantor, does hereby grant, bargain, sell and convey unto: ~~SEAN MACOBEE~~ [sic] LINDSEY WILSON, AN UNMARRIED WOMAN AND SEAN MACOBEE [sic], AN UNMARRIED MAN ~~AND LINDSEY WILSON~~ . . . the following described premises. . . ." Wilson and Mocabee lived in the home from October 2013 to November 2017. Wilson and Mocabee's relationship ended in 2017.

2

On October 20, 2017, Wilson filed a complaint for quiet title, unlawful detainer,[1] and partition against Mocabee. Mocabee answered and counterclaimed[2] for partition of the property and for the district court to declare Mocabee owned a fifty percent ownership interest in the home. Mocabee also moved for summary judgment arguing the statute of limitations barred Wilson's quiet title action. The district court heard arguments and issued a written decision and order holding that the statute of limitations barred Wilson's quiet title cause of action. The district court held that the deed unambiguously included both Wilson and Mocabee and, thus, any extrinsic evidence as to Wilson's intent in placing Mocabee on the deed was inadmissible as to that issue. Mocabee claimed an adverse interest in the property the day the deed was recorded, October 17, 2013. Finding Wilson filed the complaint more than four years after the cause of action accrued[3] and outside the applicable statute of limitations, the district court granted summary judgment for Mocabee on the quiet title cause of action. Neither party appeals that decision.

The case proceeded to a bench trial on the partition action. Mocabee filed a motion in limine requesting the district court exclude any evidence demonstrating Wilson did not intend to give Mocabee a fifty percent ownership interest in the home. This issue was argued the first day of trial. The district court acknowledged its prior ruling on summary judgment as to the quiet title action, but then noted the distinction between the procedural posture of that issue, and the one before the court in the trial of a partition action. In denying the motion in limine, the court noted:

> [T]his is a partition action. It is different in kind from what we were dealing with before, and we do have to look at matters outside the deed.
> . . . .
> In looking at cases from other jurisdictions . . . [i]t was pretty clear that the court was looking at the intent of the parties in terms of not only how the property would be titled and an ownership interest, but also in terms of contribution by

---

[1] Wilson withdrew the unlawful detainer cause of action based on Mocabee's representation that he did not reside nor did he intend to reside in the home.

[2] Mocabee filed an amended counterclaim adding an action for ouster. The parties stipulated to the fact that an ouster occurred and to the fair market rental value of the home. The result of the ouster action is not at issue on appeal.

[3] The statute of limitations for a quiet title action is four years from the date the cause of action accrues. I.C. § 5-224; *see also Brown v. Greenheart*, 157 Idaho 156, 162, 335 P.3d 1, 7 (2014).

each party in going forward in terms of expenses for maintaining the property and caring for the property and so forth.

I don't see how we can go forward with this case without looking at the parties' full intent, and both parties, for that matter, not just one party, but both parties. . . .

The district court thus recognized that while it could not consider parol evidence in the face of an unambiguous deed for purposes of the quiet title action, a partition action required proof outside the four corners of the deed as to each party's percentage of ownership in the home. After further discussion on the record regarding the distinction between a partition and a quiet title action, the parties stipulated, and the district court confirmed, the following presumption to govern the standard of proof in the trial: "there is a presumption that where we have two people on a deed that they are co-tenants owning [an] undivided 50 percent interest, that that presumption is rebuttable, that we will look at a contribution." This stipulation thus opened the door to parol evidence to determine the intent of the parties surrounding the ownership of the home–in particular, whether Wilson intended to give fifty percent of the home to Mocabee.

The bench trial lasted one day. The district court subsequently issued its Memorandum Decision and Order on Court Trial. The court concluded Wilson owned a one hundred percent interest in the home because she contributed one hundred percent of the purchase price and the evidence presented did not establish that Wilson intended to give Mocabee any ownership interest in the home. As a result, the district court held partition of the home was unnecessary. Mocabee moved the district court to reconsider, but the district court denied Mocabee's motion. Mocabee timely appealed.

### III. ISSUES ON APPEAL

1. Whether the district court erred in using Idaho Code section 6-501, the partition statute, to deprive Mocabee of any interest in the home?

2. Whether the district court abused its discretion in denying Mocabee's motion in limine, which sought to exclude evidence demonstrating Wilson did not intend to give Mocabee a fifty percent ownership interest in the home?

3. Whether the district court erred in concluding Wilson did not give Mocabee a fifty percent ownership interest in the home by including Mocabee on the deed?

4. Whether either party is entitled to attorney's fees on appeal under Idaho Code section 12-121?

### IV. STANDARD OF REVIEW

4

"Following a bench trial, this Court's review is limited to ascertaining whether the evidence supports the findings of fact, and whether the findings of fact support the conclusions of law." *Mortensen v. Berian*, 163 Idaho 47, 50, 408 P.3d 45, 48 (2017) (internal quotations omitted). "This Court will not set aside a trial court's findings of fact unless the findings are clearly erroneous." *Id.* (quoting *Borah v. McCandless*, 147 Idaho 73, 77, 205 P.3d 1209, 1213 (2009)).

> [T]his Court exercises free review over matters of law and is not bound by the legal conclusions of the trial court, but may draw its own conclusions from the facts presented. However, [this Court] will not substitute our view of the facts for the view of the district court. In view of this role, the trial court's findings of fact will be liberally construed in favor of the judgment entered.

*Id.* (internal citations and quotations omitted).

"Trial courts have broad discretion when ruling on a motion in limine." *Gunter v. Murphy's Lounge, LLC*, 141 Idaho 16, 25, 105 P.3d 676, 685 (2005). Thus, "[t]his Court reviews the trial court's decision to grant or deny a motion in limine under an abuse of discretion standard." *Id.* Under an abuse of discretion standard, this Court determines whether the trial court: "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

## V. ANALYSIS

Mocabee alleges three errors on appeal. First, Mocabee argues the district court erroneously applied Idaho Code section 6-501, the partition statute, to deprive him of any interest in the home. Second, Mocabee argues the district court abused its discretion when it denied his motion in limine to exclude evidence demonstrating Wilson did not intend to give Mocabee a fifty percent ownership interest in the home. Third, Mocabee argues the district court erred in concluding Wilson did not give Mocabee a fifty percent ownership interest in the home. For the reasons discussed below, we affirm.

## A. Mocabee invited the district court to apply Idaho Code section 6-501.

The district court found the evidence produced did not establish that Wilson intended to give Mocabee a fifty percent ownership interest in the home. As a result, the district court held Wilson owned one hundred percent of the home and that partition of the home was unnecessary.

Mocabee argues that even though the district court found partition unnecessary, the district court erroneously applied Idaho Code section 6-501, the partition statute, to *quiet title* against him. According to Mocabee, the district court had already determined in prior summary judgment proceedings that Wilson's quiet title action was time barred by the statute of limitations. Thus, Mocabee maintains it was erroneous for the district court to use the partition statute to find Mocabee owned a zero percent interest, effectively quieting title against him, in circumvention of the applicable statute of limitations period. We disagree.

Under the invited error doctrine, it is "well established that one may not successfully complain of errors one has consented to or acquiesced in." *Davison v. Debest Plumbing, Inc.*, 163 Idaho 571, 575, 416 P.3d 943, 947 (2018). "The doctrine of invited error applies to estop a party from asserting an error when his own conduct induces the commission of the error." *Id.* This Court will not reverse invited errors. *See id.*

We affirm the district court because Mocabee invited the district court to use the partition statute, Idaho Code section 6-501, in analyzing the issues presented in this case. First, Mocabee, in his briefing to the trial court, stated the following: "[w]here two or more persons take as tenants in common under an instrument silent as to their respective shares, there is a presumption that their shares are equal. This presumption may be rebutted by evidence that purchase contributions are unequal." (Internal citations and quotations omitted). This is the presumption that arises under Idaho's partition statute.

In support of his statement, Mocabee relied upon holdings from neighboring jurisdictions, all of which adhere to the presumption listed above in actions similar to the case at bar. *Hofstad v. Christie*, 240 P.3d 816, 818–19 (Wyo. 2010) (explaining "if the instrument does not specify the shares of each co-tenant, it will be presumed that they take equal, undivided interests" but the presumption "may be rebutted by parol evidence, such as proof that the co-tenants contributed unequal amounts toward the purchase price of the property[.]"); *Matter of Est. of Dern Fam. Tr.*, 928 P.2d 123, 131–32 (Mont. 1996) (applying the "equal share presumption rule" that it is presumed tenants in common have equal shares but that presumption may be rebutted by evidence demonstrating unequal contribution to purchase price); *D.M. v. D.A.*, 885 P.2d 94, 97 (Alaska 1994) ("[T]he initial presumption is that each of the parties owned an equal undivided share. If, however, it is shown in rebuttal that the parties contributed unequally to the equity in the property, a presumption arises that they intended to share the

property in proportion to their respective contributions.") (internal citation omitted); *Hoover v. Haller*, 21 N.W.2d 450 (Neb. 1946). Relying upon this authority, Mocabee invited the district court to apply the stipulated presumption to the cause of action which both parties agreed arose under Idaho Code section 6-501.

Second, Mocabee acquiesced in the district court's use of Idaho Code section 6-501 during trial. The district court, recognizing there was little Idaho case law regarding the issue before it, stated:

> I think I would like to hear some argument from the parties, from the attorneys, if you're able to do this and ready to do this, on how we should move forward in terms of whether we adopt what courts in other states have done with respect to presumptions and whether those presumptions are rebuttable or not, or, just go forward without any presumptions and a determination of what the interests are, if any.

The parties indulged and presented their respective arguments. Mocabee, reiterating the position taken in his briefing, argued through counsel:

> So I think what it is, it's a three-pronged, three-step approach we take. First, they're 50/50 because they're on the deed. And I think we can probably pretty much all agree to that and stipulate to that. I think that makes sense. The second one is, okay, unequal contributions, okay, and they'll put on evidence about the unequal contributions. And then the third step is, we're going to put on evidence of the gift, of the intention of the parties to go through and ignore the unequal contribution presumption, if you will, the rebuttal presumption of, okay, they actually did intend to gift 50/50.

After hearing the parties' arguments, the district court explained:

> The Court:     This is the law that we will follow, then, what the parties have discussed, we will assume that there is a presumption that where we have two people on a deed that they are co-tenants owning [an] undivided 50 percent interest, that that presumption is rebuttable, that we will look at a contribution. I don't think there's any dispute that [Wilson] contributed 100 percent of the purchase price of the property; correct?
> Mr. Frantz:     That is correct, Your Honor.
> The Court:     All right. *And I will accept that as a stipulation?*
> Mr. Frantz:     *Yes.*
> The Court:     Okay. If you don't want to, that's okay.
> Mr. Frantz:     Honestly, I would feel more comfortable if we took evidence on that. I'm not trying to take up extra time.
> Mr. Bistline:     It's admitted in the pleadings, Your Honor. They've already admitted that.

| | |
|---|---|
| Mr. Frantz: | It is, but I guess I would want to have some evidence on it, but it is admitted in the pleadings. |
| The Court: | Okay. And so we're really dealing with the gift issue and the intent of the parties. *So, Mr. Frantz [counsel for Mocabee], does it make sense, as Mr. Bistline [counsel for Wilson] suggested, that we turn the page to you to begin with respect to the defendant's contention that there was a gift?* |
| Mr. Frantz: | *I suppose it does*. |

(Emphasis added.) By this colloquy, Mocabee's counsel acquiesced to two things: first, he would go first to establish the elements of a gift; and second, Mocabee bore the burden of proof on that issue.

"Every interest in real estate granted or devised to two (2) or more persons, other than executors or trustees, as such constitutes a tenancy in common, unless expressly declared in the grant or devise to be otherwise." I.C. § 55-508. It was undisputed that the deed listed both Wilson and Mocabee; thus, as the parties stipulated, Wilson and Mocabee held the home as tenants in common. Based on this designation, Mocabee relied upon the presumption other jurisdictions have adopted in partition actions: where two or more persons take as tenants in common under an instrument that is silent as to ownership interest, the presumption is that their shares are equal *unless* there exists evidence of unequal contributions to the purchase price.

Mocabee acquiesced in the district court's use of the presumptions that arise in partition actions. Therefore, Mocabee cannot now complain the district court erroneously applied section 6-501 simply because the district court was unpersuaded by the evidence of donative intent and ultimately held Mocabee had no ownership interest in the home. For these reasons, we affirm the district court's use of the analytical paradigm of section 6-501 to these unique facts, given the stipulation and invitations of Mocabee's counsel that the court do so.

In reaching this conclusion, we recognize, as did the district court, that "[i]n interpreting and construing deeds of conveyance, the primary goal is to seek and give effect to the real intention of the parties." *Porter v. Bassett*, 146 Idaho 399, 404, 195 P.3d 1212, 1217 (2008) (quoting *Benninger v. Derifield,* 142 Idaho 486, 489, 129 P.3d 1235, 1238 (2006)). But this is not a case about construing a deed; it is an action to determine, when the deed was silent on its face, whether Wilson intended to give Mocabee any interest in the home at all. The distinction to be drawn here is that this was not an action on the deed, but a partition action to determine the ownership interests of each party. The district court and the parties agreed that the deed itself

gave rise to the fifty percent presumption in favor of Mr. Mocabee; however, the parties also agreed that the presumption could be rebutted with evidence of contribution, which lead to what Mocabee's counsel referred to as the third step in the process–determining donative intent through the evidence presented by both parties. Thus, the question for the district court was distilled to whether Wilson intended to give one-half of the home to Mocabee. On this issue, Mocabee had the burden to establish that Wilson intended to give him one-half of the residence. Mocabee's counsel recognized and assumed this burden:

> [W]e're going to put on evidence of the gift, of the intention of the parties to go through and ignore the unequal contribution presumption, if you will . . . .
>
> . . . .
>
> I think the evidence that we're going to show is there was an intent, there was an understanding between the parties that Mr. Mocabee was going to have half the home.

Thus, any complaint now by Mocabee that he was put to an unfair burden, or that the court employed the improper standard of proof, is a problem of his own making. As such, we affirm the district court's analysis and use of presumptions sought by both parties below.

**B.      The district court did not abuse its discretion in denying Mocabee's motion in limine since Mocabee stipulated to evidence of intent being offered and considered by the district court.**

Before trial, Mocabee moved the district court in limine to exclude any evidence demonstrating Wilson did not intend to give Mocabee a fifty percent ownership interest in the home. The district court denied Mocabee's motion. Mocabee argues the district court's denial of his motion in limine was an abuse of discretion because the deed is unambiguous and evidence outside the deed itself was inadmissible.

An action for partition asks the court to divide property owned by multiple co-tenants based on each individual owner's interests in the property. *See* I.C. § 6-501. "The rights of the several parties, plaintiff as well as defendant, may be put in issue, tried and determined in [a partition] action . . . the title must be ascertained by proof to the satisfaction of the court. . . ." I.C. § 6-508. Consideration of proof of intent by the court, notwithstanding Mocabee's motion in limine to the contrary, was proper based on the subsequent agreement of Mocabee himself. An order granting a motion in limine is not a final order. *State v. Young*, 136 Idaho 113, 120, 29 P.3d 949, 956 (2001). As such, Mocabee's subsequent stipulation regarding the nature of the proof required during trial is binding on him on appeal. Mocabee invited and pursued a course seeking

to prove the parties' intent. He thus cannot complain and seek relief from that alleged error now. *Debest Plumbing*, 163 Idaho at 575, 416 P.3d at 947.

**C.      The district court did not err when it concluded Wilson did not intend to give Mocabee a fifty percent ownership interest in the home.**

The district court held Mocabee failed to show that Wilson intended to give him a fifty percent ownership interest in the home. Mocabee argues the district court's conclusion was erroneous because Wilson knew including Mocabee on the deed would give him a fifty percent ownership interest and she did so anyway.

"Under Idaho law, a 'gift' is defined to mean 'a voluntary transfer of property by one to another without consideration or compensation therefor.' " *Banner Life Ins. Co. v. Mark Wallace Dixson Irrevocable Tr.*, 147 Idaho 117, 126, 206 P.3d 481, 490 (2009) (quoting *Stanger v. Stanger*, 98 Idaho 725, 728, 571 P.2d 1126, 1129 (1977)). To effectuate a gift, the donor must manifest intent to make a gift of the property to the donee. *See id.* "Donative intent may be proven by direct evidence, including statements of donative intent, or inferences drawn from the surrounding circumstances, such as the relationship between the donor and donee." *Id.*

The question of intent is one of fact and thus, the determination as to whether Wilson intended to give Mocabee any ownership interest in the home is an issue for the district judge as the trier of fact. *See Idaho Dev., LLC v. Teton View Golf Ests., LLC*, 152 Idaho 401, 406, 272 P.3d 373, 378 (2011). "Following a bench trial, this Court's review is limited to ascertaining whether the evidence supports the findings of fact, and whether the findings of fact support the conclusions of law." *Mortensen*, 163 Idaho at 50, 408 P.3d at 48 (internal quotations omitted). Findings of fact will not be set aside unless the findings are clearly erroneous. *Id.*

> Clear error will not be deemed to exist if the findings are supported by substantial and competent, though conflicting, evidence. If there is evidence in the record that a reasonable trier of fact could accept and rely upon in making the factual finding challenged on appeal, there is substantial and competent evidence.

*Id.* (internal citations and quotations omitted). "Substantial evidence is more than a scintilla of proof, but less than a preponderance. It is relevant evidence that a reasonable mind might accept to support a conclusion." *Alsco, Inc. v. Fatty's Bar, LLC*, 166 Idaho 516, 526, 461 P.3d 798, 808 (2020) (citation omitted). In addition, we reaffirm the oft-cited maxim that appellate courts in Idaho do not reweigh evidence. *See, e.g., State v. Doe*, 143 Idaho 383, 388, 146 P.3d 649, 654 (2006). Instead, we defer to the trial court's unique ability to "accurately weigh the evidence and

judge the demeanor of the witnesses" while taking into account the trial court's "superior view of the entire situation." *Lunneborg*, 163 Idaho at 866, 421 P.3d at 197 (citation omitted).

Mocabee relies on the following evidence to demonstrate Wilson intended to give him a fifty percent ownership interest in the home: (1) Wilson instructed the title company to include Mocabee on the deed; and (2) despite her parents' warning that including Mocabee on the deed would give him an ownership interest, Wilson voluntarily included Mocabee on the deed anyway.

It is undisputed that Wilson instructed the title company to include Mocabee on the deed. Other jurisdictions have held that placing a partner's name on the deed is conclusive evidence of donative intent. *See Hofstad*, 240 P.3d at 818–19 (holding there was conclusive evidence of intent to gift an interest in the property to donee's partner when donee put partner's name on the deed after they had rekindled their relationship). Additionally, Wilson gave this instruction to the title company despite her parents informing her that Mocabee could claim an ownership interest in the home if he were included on the deed. Even so, donative intent is ascertained from inferences drawn when examining *all* surrounding circumstances. *See Banner Life Ins. Co.,* 147 Idaho at 126, 206 P.3d at 490. The facts relied upon by Mocabee are not to be viewed in a vacuum; rather, all evidence of donative intent must be reviewed as contained in the entire record, while again showing deference to the district court's unique ability to weigh credibility and determine facts. *Lunneborg*, 163 Idaho at 866, 421 P.3d at 197.

When reviewing all of the evidence in the record, a reasonable trier of fact could find that Wilson did not intend to give Mocabee a fifty percent ownership interest in the home, a gift of more than $150,000.00. Wilson testified on more than one occasion that she did not intend to give Mocabee a fifty percent ownership interest.

Q:     Did you ever intend to give [Mocabee] a 1 percent interest in the home?
A:     No.
Q:     How about a 2 percent interest?
A:     No.
Q:     A 3 percent interest?
A:     No.
Q:     For the sake of time, let's just assume I say 4 all the way through 49. Did you ever intend to give [Mocabee] any interest between 4 percent and 49 percent?
A:     Never.

11

Wilson also testified as to why she included Mocabee on the deed. According to Wilson, Mocabee told her he would not contribute financially to any home she purchased unless his name was on the deed. As Wilson explained:

> Q: And then what did you do when you saw all those documents that listed everything [with Mocabee's name first and then Wilson's name]?
> A: I basically told them, the title company, that I'm the one paying for this house, so I need my name to be on there first.
>
> . . . .
>
> Q: Why did you want to be first?
> A: I didn't know that it meant anything. Otherwise, I just – my opinion, I just thought that being first is the person who is paying for it, and then the second is like the authorized user.
> Q: And the title company didn't provide any advice about this?
> A: No, I went in blind.

In addition, while going through the closing process, Wilson repeatedly asked Mocabee for reassurances that he would not "screw" her and try to take the home if the two were to break up. When asked what Wilson meant by seeking reassurances, Wilson testified: "[j]ust basically, that if anything ever happened to us, he would walk away and take his name off the house and move on and not try to take me to court to get half the cost or alimony or anything; just walk away, move forward." Mocabee confirmed Wilson's testimony when he testified that he would not try to "screw" Wilson out of the home if the relationship turned sour because he never intended for the couple to break up and they intended to be together forever. Lastly, a portion of Mocabee's own testimony undercuts his position on appeal, since not even he considered Wilson's inclusion of him on the deed to be a gift. Instead, Mocabee testified that he thought he owned fifty percent of the home because the couple had gone through the building process together and had shared everything together for over thirteen years.

Mocabee also argues that an "agreement"[4] reached between Wilson and Mocabee after Wilson had an affair substantiates Wilson's intent to give him an ownership interest in the home. The agreement provided: "I, Lindsey Wilson, by my own volition and suggestion, do hereby grant Sean Mocabee permission to seek relationships with women outside our relationship. He will be subject to no restrictions, penalties, or punitive actions. *His claim to the [home] shall not be threatened in anyway by these actions. . . .*" (Emphasis added). Mocabee emphasizes Wilson's

---

[4] While referring to the document signed by Wilson as evidence of an "agreement," we make no conclusion here that such evidence would support a finding that a binding contract existed between Wilson and Mocabee.

deposition where she explained that "claim" meant an ownership interest. However, this was contradicted by Wilson's later testimony where she explained that she understood "claim" to mean that Wilson would not retaliate against Mocabee for seeking extra relationships by kicking him out of the home.

Where evidence is conflicting, clear error does not exist if a reasonable trier of fact could accept and rely upon evidence in making its decision. *Mortensen*, 163 Idaho at 50, 408 P.3d at 48. A reasonable trier of fact could find Wilson did not intend to give Mocabee a fifty percent ownership interest even if she generally understood the word "claim" to be "ownership interest" where she thought she was agreeing to not retaliate against Mocabee by kicking him out of the house the two had resided in together. In summary, there is substantial evidence that a reasonable trier of fact could rely upon in making the factual finding that Wilson did not intend to give Mocabee a fifty percent ownership interest in the home. It is not our place to second-guess that evidence on appeal. Thus, we hold the district court did not err in concluding Mocabee had no interest in the house.

**D.     Neither party is entitled to attorney fees on appeal under Idaho Code section 12-121.**

Both parties sought attorney fees pursuant to Idaho Code section 12-121. Idaho Code section 12-121 provides: "[i]n any civil action, the judge may award reasonable attorney's fees to the prevailing party or parties when the judge finds that the case was brought, pursued or defended frivolously, unreasonably or without foundation." An action is frivolous and unreasonable "when an appellant has only asked the appellate court to second-guess the trial court by reweighing the evidence or has failed to show that the district court incorrectly applied well-established law." *Clark v. Jones Gledhill Fuhrman Gourley, P.A.*, 163 Idaho 215, 230, 409 P.3d 795, 810 (2017) (quoting *Snider v. Arnold*, 153 Idaho 641, 645–46, 289 P.3d 43, 47–48 (2012)). "[F]ees will generally not be awarded when good faith arguments are made on appeal." *Id*.

Although Wilson is the prevailing party, Mocabee made good faith arguments in this appeal and supported those arguments with cogent authority. Although we were unpersuaded, we cannot hold Mocabee brought this appeal frivolously, unreasonably or without foundation. Therefore, we decline to award fees pursuant to section 12-121 to Wilson.

**VI. CONCLUSION**

13

For the reasons discussed herein, we affirm the district court. We decline to award fees on appeal pursuant to Idaho Code section 12-121. We award costs as a matter of course to Wilson pursuant to Idaho Appellate Rule 40(a).

Chief Justice BURDICK, Justices BRODY, STEGNER and MOELLER, CONCUR.